UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2009 OCT 13 PM 2: 29

CLE... ...

KENNETH A. STOECKLIN
    in his contracted capacity as
    Power of Attorney in fact
    Plaintiff

vs                          Case No. 5:09-cv-449-OC-10GRJ

UNIVERSAL PROPERTY & CASUALTY INSURANCE CO.

and SHELDON-PALMES INSURANCE, INC.
    Defendants

---

## COMPLAINT
### Trial by Jury Demanded

---

COMES NOW the Plaintiff, KENNETH A. STOECKLIN, in his contracted capacity as Power of Attorney in fact from MERLIN S. GAGLE, to seek Court Judgment of $161,000 in default of civil damages arising from loss by Fire of GAGLE'S residence, covered by Defendant UNIVERSAL'S Policy No. 592-057-081; **Fire Loss of May 4, 2009**. Policy purchased from AGENT SHELDON-PALMES INSURANCE, INC.

### PARTIES

KENNETH A. STOECKLIN is a resident of Citrus County, Florida, in his official capacity as Power of Attorney by express contract for the interest of the primary party of interest, MERLIN S. GAGLE, who is temporarily absent from the United States of America .

C-7890
$350 00

SHELDON-PALMES INSURANCE, INC. is a Florida corporation with address of 8469 W. Grover Cleveland Blvd.,Homosassa, FL 34446 and AGENT in this matter for UNIVERSAL PROPERTY & CASUALTY INSURANCE CO. (hereafter "UNIVERSAL") the provider of subject Fire Insurance Policy.

UNIVERSAL PROPERTY & CASUALTY INSURANCE CO. is a Florida corporation located at 1110 W. Commercial Blvd., Fort Lauderdale, FL 33309. and issuer of Homeowner's Protection Policy at issue herein. It is a wholly owned subsidiary of UNIVERSAL INSURANCE HOLDING CO. (FL corporation) at same address, which is a wholly owned subsidiary of UNIVERSAL INSURANCE HOLDINGS, INC. a Delaware corporation, with Florida offices at same address.

## JURISDICTION

The parties; Merlin Gagle, Kenneth A. Stoecklin, and AGENT Sheldon-Palmes Insurance. Inc. are residents of Citrus County, Florida. UNIVERSAL Property & Casualty Insurance Co. is a Florida corportion located in Fort Lauderdale, FL. Jurisdiction therefore lies in the United States District Court, Middle District of Florida, Ocala Division.

## VENUE

The contract at issue herein, the supplying AGENT, and the damaged party herein (Gagle) have all operated within the jurisdiction of the Ocala Division, Middle District of Florida, UNITED STATES DISTRICT COURT.

## STATEMENT OF FACTS

1.      Under date of **March 19, 2009**, UNIVERSAL issued Policy No.
592-057-081 to Merlin S. Gagle, covering real estate at 8411 Doug Corrigan
Lane,Crystal River, FL34429 through UNIVERSAL AGENT,SHELDON-PALMES
INSURANCE, INC.  Premium for insurance was paid by Merlin S. Gagle.

2.      On **April 17, 2009** insured Merlin S. Gagle departed the U.S.A. for a
temporary vacation beyond the U.S.A.

3      On **May 4, 2009** the residential house caught fire and was totally
destroyed.  Insurer UNIVERSAL was noticed within hours; a neighbor contacted
Mr. Gagle by e-mail, advising of Fire.

4      UNIVERSAL apparently authorized an "adjuster" named Marcus Ayo
of Hollywood, FL to visit the scene of the Fire and make necessary report to
UNIVERSAL.  Mr. Ayo visited the scene of the fire loss on May 5 or 6, 2009.

5      UNIVERSAL did not formally notify Mr. Gagle of authorization of Ayo or any
other  verbally claimed "adjuster(s)".

6.      Regular and timely Claims of Damage were made to UNIVERSAL by
Kenneth A. Stoecklin, by Power of Attorney from and for Merlin S. Gagle.

7.      At no time, from Claim  of Fire Loss by Power of Attorney, to Notice of
Representation of UNIVERSAL by Counsel,  Loughren and Doyle, P.A., Fort
Lauderdale, FL.,  was there written communication or authorization, from

UNIVERSAL concerning subject Claim for Damages or appointment of
"adjusters".

   (a) By permitted discovery, Plaintiff demands production of documents
from UNIVERSAL, with verified delivery, of formal Notification to Plaintiff or Mr.
Gagle, of persons to investigate and resolve damage claim.

8.  Under date of **August 4. 2009**, Attorney Joseph M. Loughren wrote to
Stoecklin, advising that he represented UNIVERSAL and requested amend-
ment to Power of Attorney and Affidavit of current status of Power of Attorney
from Merlin Gagle.  Mr. Gagle amended Power of Attorney and Mr. Stoecklin
executed Affidavit and returned to Counsel Loughren promptly.

9.  Hearing nothing further, Plaintiff Noticed Attorney Loughren on **September 17**
that a current status of Claim resolution was long overdue, and failing an
update of Claim status by September 21, 5 p.m.,  the following Caveat would be
presumed:

 *Caveat - If I do not receive from you on Monday, Sept. 21, reporting current
 status of Universal Claim, (other than the repeated and misleading error
 "investigating the claim"). it will be presumed that Universal denies liability
 under their policy No. 592-057-081; their claim #09-5904.*

10.  Having received nothing by mail or e-mail by 10 p.m. September 21, 2009,

Plaintiff issued e-mail to Counsel Loughren, in execution of the Caveat, to wit:

 *"at 10 pm, Sept. 21, I have received no response from you; which completes
 NO RESPONSE, FROM UNIVERSAL PROPERTY & CASUALTY
 INSURANCE CO., at any time since Loss reported to UNIVERSAL, other
 than your correspondence on their behalf"*.

11. WHEREFORE, Plaintiff Notices this Honorable Court that Defendant

UNIVERSAL has defaulted its' failure to timely resolve and pay the Fire Loss

Claim. Plaintiff was therefore forced to litigate the payment liability of the

subject Casualty Insurance Policy Contract.

## CONCLUSION

Plaintiff moves this Honorable Court for Judgment against Defendants,

of $161,000 and additional attorney fees, court costs and expenses, resulting

from default of UNIVERSAL and AGENT SHELDON-PALMES.

Respectfully submitted,

Kenneth A. Stoecklin, acting under Power of Attorney
by and for benefit of Merlin S. Gagle
P. O. Box 307, Crystal River, FL 34423
Phone 352-795-5980
e-mail   kstoecklin1@tampabay.rr.com

## VERIFICATION

STATE OF FLORIDA :
COUNTY OF CITRUS :

BEFORE ME personally appeared Kenneth A. Stoecklin, who, being by me
first duly sworn and identified in accordance with Florida law, deposes and says

1. My name is Kenneth A. Stoecklin, and acting under Power of
Attorney from and for Mr. Merlin S. Gagle and acting as Agent of Mr. Gagle.

2. I have read and understood the attached Complaint, and each fact
alleged therein is true and correct of my own personal knowledge.

Further, Affiant sayeth naught.

Kenneth A. Stoecklin, as Agent of Merlin S. Gagle

SWORN TO and subscribed before me this _12_ day of October, 2009

Notary Public

MINDY M. GILLEY
Notary Public - State of Florida
My Commission Expires Aug 8, 2011
Commission # DD 703302
Bonded Through National Notary Assn.



MINI Y M GILLEY
Notary Public - State of Florida
My Commission Expires Aug 8 2014
Commission # DD 793307
Bonded Through National Notary Assn

/

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KENNETH A. STOECKLIN
  Plaintiff, *Pro Se*

vs                                          Case No. _____

UNIVERSAL PROPERTY & CASUALTY INSURANCE CO.
  and
SHELDON-PALMES INSURANCE, INC.
  Defendants

---

# EXHIBITS
### for Complaint

---

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | Power of Attorney from Merlin S. Gagle | 2 |
| B | Home Owner Policy  UPCIC 592-057-081 | 22 |
| C | Internet Advertising, UPCIC, 6/30/2009 | 1 |
| D | Claim for loss Damages | 4 |

## General Durable Power of Attorney

I, the undersigned, Merlin S. Gagle, of 8411 W. Doug Corrigan Ln,

Crystal River, Florida 34429, currently on extended vacation in

Cebu City, Philippines,

**appoint**

Kenneth Stoecklin, 4569 N. Mitchum Pt. of Crystal River, Florida, 34428,

as my Attorney-in-Fact (Agent) with the power of delegation and substitution.

If my Agent is unable or unwilling to serve for any reason, I designate

Fred J. Gagle, of Amethyst Way, Lake Mary, Florida,

as substitute Agent.

1. I hereby revoke any and all previous powers of attorney signed by me
except for my Power of Attorney for Health Care which shall remain in force.

2. This document shall be construed and interpreted as a general durable
power of attorney and my Agent shall have full authority to act on my behalf in
relation to my property and affairs, as relates to property at 8411 W. Doug
Corrigan Ln, Crystal River, Florida 34429, which was totally destroyed by fire,
and to deal with insurance matters related to such fire, including claims for the
real property and the furniture. Claims funds shall be deposited in my bank
account at Wachovia Bank, Crystal River, Florida 34429.

3. I indemnify any third party from any claims which may arise against the
third party because of reliance on this power of attorney.

4. My Agent shall be entitled to compensation for his services for a total of Two
Hundred Dollars ($200.00).

5. This is a Durable Power of Attorney. Even if I should become disabled or
incompetent, it shall remain effective until my death.

*[signature: Merlin S. Gagle]*

        That we execute this affidavit to legally attest to the truthfulness of
the foregoing premises for all lawful intents that this may serve best.

*A True Copy / Transmitted to Principles, Oct. 17, 2009*

# Ex A-1



IN WITNESS WHEREOF, we have hereunto affixed our signatures this

_5/7/09_ day of May 7, 2009 at Cebu City, Philippines.

LORNA DINGGONG FRIZAS

Affiant

Rey J. Posadas

Affiant

SUBSCRIBED AND SWORN TO before me this MAY 0 7 2009 _____ day of May 7, 2009 at Cebu City, Philippines. Affiants exhibit their Community Tax Certificate Nos. _2122822h_ and _21228231_ , issued at _CEBU CITY PHIL_, on _MAY 7,09_

DOC. NO _211_
PAGE _44_
BO _tmt_
_9_

ROLANDO C. GRAPA
NOT___ ___LIC
UNT___ ___IO
ATTY'S R___ ___-21-66
PTR NO. 85___ ___CEBU CITY
IBP NO. IR NO. 754___-12-5-08 CEBU CITY

A True Copy —
Benneth G. Arnold   Oct. 12, 2009

EX A.2

Ex A-2.

| **Universal Property and Casualty Insurance**<br>c/o Universal Risk Advisors<br>**1110 W. COMMERCIAL BLVD.**<br>**SUITE 300**<br>**FORT LAUDERDALE FL 33309**<br>**TOLL FREE: 800-425-9113**<br>*Amendments: Insured Name* | Homeowners (HO3)<br>**Declaration Effective**<br>03/19/2009 |  |
|---|---|---|

| | 1110 W. Commercial Blvd. Suite ☐ Fort Lauderdale, FL |
|---|---|
| Claims: 1-800-218-3206 | Service: Contact your Agent Listed Below |

| Policy Number | Policy Period FROM | TO | 12:01 AM Standard Time | Agent Code |
|---|---|---|---|---|
| 592-057-081 | 03/19/2009 | 03/19/2010 | | 9K15 |

| **Named Insured and Address**<br>Merlin Gagle<br>P O BOX 1685<br>Crystal River  FL  34423<br><br>( )  - | **Agent Name and Address**<br>Sheldon-Palmes Insurance Inc<br>8469 W. Grover Cleveland Blvd<br>Homosassa FL 34448-<br>(352) 628-1030 |
|---|---|

**Premium Summary**

| Basic Coverages<br>Premium | Attached Endorsements<br>Premium | Assessments / Surcharges | MGA Fees/Policy Fees | Total Policy Premium<br>(Including Assessments & Surcharges) |
|---|---|---|---|---|
| $619 | $77 | | $53.03 | $749.03 |

**Location 001**

| Form | Construction | Year | Townhouse/<br>Rowhouse | Number of<br>Families | Occupied | Protection<br>Class | Territory | BCEG |
|---|---|---|---|---|---|---|---|---|
| HO3 | Frame | 1980 | N | 1 | Y . | . 6 | 731 | 99 |

| County | Dwelling<br>Replacement Cost | Home Updated | Protective Device Credits:<br>Burglar  Fire  Sprinkler  Shutter | Wind / Hail<br>Exclusion |
|---|---|---|---|---|
| Citrus | Y | Y | N    N    N    N | N |

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will expire.

Insurance is provided only with respect to the following coverages for which a limit of liability is specified, subject to all the conditions of this policy.

| COVERAGES - SECTION I | LIMITS | PREMIUMS | COVERAGES - SECTION II | LIMITS | PREMIUMS |
|---|---|---|---|---|---|
| Coverage -A- Dwelling | $96,200 | $619 | Coverage -E- Personal Liability | $ 100,000 | |
| Coverage -B- Other Structures | $9,620 | | Coverage -F- Medical Payments | $1,000 | |
| Coverage -C- Personal Property | $48,100 | | | | |
| Coverage -D- Loss of Use | $19,240 | | | | |

**NOTE: The portion of your premium for hurricane coverage is:    $357**

## Section 1 coverages subject to $1,000 non-hurricane deductible per loss.
## Section 1 coverages subject to $1,924 hurricane deductible per calendar year.

# THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES WHICH MAY RESULT IN HIGH OUT OF POCKET EXPENSES TO YOU.

**If there are hurricane losses in a calendar year on more than one UPCIC policy, the hurricane deductible will be the highest amount stated in any one of the policies. If you have a hurricane loss and choose a lower deductible at policy renewal, the lower deductible will not take effect until January 1 of the following year.**

DESCRIBED LOCATION - The Described Location covered by this policy is at the above address unless otherwise stated:
8411 Doug Corrigan Lane , Crystal River, FL  34429

**Flood coverage is not provided by Universal Property & Casualty Insurance Company and is not part of this policy.**

| | | *Budley J. Maie* |
|---|---|---|
| Countersignature | Date | President |

UPCIC HO003 (01/02)

Page 1 of 2



EX- B        1 of 22

| Universal Property and Casualty Insurance<br>c/o Universal Risk Advisors<br>**1110 W. COMMERCIAL BLVD.**<br>**SUITE 300**<br>**FORT LAUDERDALE FL 33309**<br>**TOLL FREE: 800-425-9113** | Homeowners (HO3)<br>**Declaration Effective**<br>03/19/2009 |  |
|---|---|---|

| 1110 W. Commercial Blvd. Suite □ Fort Lauderdale, FL |
|---|
| Claims: 1-800-218-3206 | Service: Contact your Agent Listed Below |

| Policy Number | Policy Period<br>FROM | TO | | Agent Code |
|---|---|---|---|---|
| 592-057-081 | 03/19/2009 | 03/19/2010 | 12:01 AM Standard Time | 9K15 |

**Mortgagee / Additional Interest 01**
TERRACE MORTAGGE CO
ISAOA/ATIMA
900 ASHWOOD PARKWAY STE 130
ATLANTA GA 30338
( ) -

**Agent Name and Address**
Sheldon-Palmes Insurance Inc
8469 W. Grover Cleveland Blvd
Homosassa FL 34448-
(352) 628-1030

———————— Additional Interest ————————

| Mortgagee / Additional Interest 01 | Mortgagee / Additional Interest 02 | Mortgagee / Additional Interest 03 |
|---|---|---|
| TERRACE MORTAGGE CO<br>ISAOA/ATIMA<br>900 ASHWOOD PARKWAY STE 130<br>ATLANTA GA 30338<br>( ) -<br>Loan # | ( ) -<br>Loan # | ( ) -<br>Loan # |

———— Policy Forms and Endorsements Applicable to this Policy ————

| NUMBER EDITION | DESCRIPTION | LIMITS | PREMIUMS |
|---|---|---|---|
| HO 00 03 (04/91) | Homeowners 3 Special Form | | $619.00 |
| HO 04 41 (04/91) | Additional Insured - Residence Premises | | |
| UPCIC 04 90 04 91 (06-07) | Personal Property Replacement Cost | | $77.00 |
| HO 04 96 (04/91) | No Coverage for Home Day Care Business | | |
| UPCIC 16 (01/98) | Loss Assessment Coverage | $1,000 | |
| UPCIC 23 01 02 (06-07) | Special Provisions - Florida | | |
| UPCIC 25 01 98 (06-07) | Hurricane Deductible | | |
| UPCIC 00 07 (07-07) | Sinkhole Coverage | | |
| UPCIC 03 33 07 08 | Limited Fungi, Wet or Dry Rot, or Bacteria Coverage     Section I - $10,000/$20,000; Section II - $50,000 | | |
| | MGA FEE | | $25.00 |
| | EMERGENCY MANAGEMENT PREPAREDNESS ASSISTANCE TRUST FUND SURCHARGE | | $2.00 |
| | CITIZEN'S HIGH RISK ACCOUNT DEFICIT ASSESSMENT | | $0.07 |
| | FHCF ASSESSMENT | | $6.96 |
| | CITIZEN'S EMERGENCY ASSESSMENT | | $9.74 |
| | FIGA ASSESSMENT | | $0.70 |
| | 2007 FLORIDA INSURANCE GUARANTY ASSOCIATION | | $8.56 |

# LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.

# COINSURANCE CONTRACT: THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

---

This replaces all previously issued policy declarations, if any and is subject to all forms and endorsements attached to this policy.

UPCIC HO003 (01/02)          Print Date: 06/01/2009 02:32:48 PM                    Page 2 of 2

2 of 22

| POLICY NUMBER |
| --- |
| UPCIC 592-057-081 |

Merlin Gagle & Elenita Gagle
P O BOX 1685
Crystal River FL 34423

*AMENDED*



UNIVERSAL PROPERTY AND
CASUALTY INSURANCE COMPANY

# HOME OWNER POLICY

**ADMINISTRATION OFFICE:**
**1110 W. Commercial Blvd., Suite 100**
**Fort Lauderdale, FL 33309**
**Customer Service: 1-800-425-9113**

**NOTICE!** **THIS POLICY DOES NOT COVER FLOOD LOSS**

This policy Jacket with the Policy Provisions, Declarations and Endorsements, if any, issued to form a part thereof, complete the policy.

B

3 OF 22

| **Universal Property and Casualty Insurance**<br>c/o Universal Risk Advisors<br>**1110 W. COMMERCIAL BLVD.**<br>**SUITE 300**<br>**FORT LAUDERDALE FL 33309**<br>**TOLL FREE: 800-425-9113** | Homeowners (HO3)<br>**Declaration Effective**<br>03/19/2009 |  |
|---|---|---|
| Claims: 1-800-218-3206 | 1110 W. Commercial Blvd.  Suite ☐ Fort Lauderdale, FL | |
| | Service: Contact your Agent Listed Below | |

| Policy Number | From | To | Standard Time | Rating Code |
|---|---|---|---|---|
| 592-057-081 | 03/19/2009 | 03/19/2010 | 12:01 AM Standard Time | 9K15 |

**Mortgagee / Additional Interest 01**
COUNTRYWIDE HOME LOANS INC
ISAOA ATIMA
P O BOX 961206, FTWX-22
FORT WORTH  TX  76161
( )  -

*AMENDED*

**Agent Name and Address**
Sheldon-Palmes Insurance Inc
8469 W. Grover Cleveland Blvd
Homosassa FL 34448-
(352) 628-1030

---
**Additional Interest**

| Mortgagee / Additional Interest 01 | Mortgagee / Additional Interest 02 | Mortgagee / Additional Interest 03 |
|---|---|---|
| COUNTRYWIDE HOME LOANS INC<br>ISAOA ATIMA<br>P O BOX 961206, FTWX-22<br>FORT WORTH  TX  76161<br>( )  -<br>Loan # 181277576 | ( )  -<br>Loan # | ( )  -<br>Loan # |

**Policy Forms and Endorsements Applicable to this Policy**

| NUMBER EDITION | DESCRIPTION | LIMITS | PREMIUMS |
|---|---|---|---|
| HO 00 03 (04/91) | Homeowners 3 Special Form | | $619.00 |
| HO 04 41 (04/91) | Additional Insured - Residence Premises | | |
| UPCIC 04 90 04 91 | Personal Property Replacement Cost | | $77.00 |
| HO 04 96 (04/91) | No Coverage for Home Day Care Business | | |
| UPCIC 16 (01/98) | Loss Assessment Coverage | $1,000 | |
| UPCIC 23 01 02 | Special Provisions - Florida | | |
| UPCIC 25 01 98 | Hurricane Deductible | | |
| UPCIC 00 07 (07-07) | Sinkhole Coverage | | |
| UPCIC 03 33 07 08 | Limited Fungi, Wet or Dry Rot, or Bacteria Coverage    Section I - $10,000/$20,000; Section II - $50,000 | | |
| | MGA FEE | | $25.00 |
| | EMERGENCY MANAGEMENT PREPAREDNESS ASSISTANCE TRUST FUND SURCHARGE | | $2.00 |
| | CITIZEN'S HIGH RISK ACCOUNT DEFICIT ASSESSMENT | | $0.07 |
| | FHCF ASSESSMENT | | $6.96 |
| | CITIZEN'S EMERGENCY ASSESSMENT | | $9.74 |
| | FIGA ASSESSMENT | | $0.70 |
| | 2007 FLORIDA INSURANCE GUARANTY ASSOCIATION | | $8.56 |

# LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.

# COINSURANCE CONTRACT: THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

This replaces all previously issued policy declarations, if any and is subject to all forms and endorsements attached to this policy.

3

4 of 22



| **Universal Property and Casualty Insurance**<br>c/o Universal Risk Advisors<br>**1110 W. COMMERCIAL BLVD.**<br>**SUITE 300**<br>**FORT LAUDERDALE FL 33309**<br>**TOLL FREE: 800-425-9113** | Homeowners (HO3)<br>**Declaration Effective**<br>03/19/2009 | UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY |
|---|---|---|

| Claims: 1-800-218-3206 | 1110 W. Commercial Blvd.  Suite ☐ Fort Lauderdale, FL |
|---|---|
| | Service: Contact your Agent Listed Below |

| Policy Number | From | Policy Period | To | | Area Code |
|---|---|---|---|---|---|
| 592-057-081 | 03/19/2009 | 03/19/2010 | 12:01 AM Standard Time | | 9K15 |

| **Named Insured and Address**<br>Merlin Gagle & Elenita Gagle<br>P O BOX 1685<br>Crystal River  FL  34423<br><br>( )  - | **Agent Name and Address**<br>Sheldon-Palmes Insurance Inc<br>8469 W. Grover Cleveland Blvd<br>Homosassa FL 34448-<br>(352) 628-1030 |
|---|---|

*AMENDED*

### Premium Summary

| Basic Coverages<br>Premium | Attached Endorsements<br>Premium | Assessments / Surcharges | MGA Fees/Policy Fees | Total Policy Premium<br>(Including Assessments & Surcharges) |
|---|---|---|---|---|
| $619 | $77 | | $53.03 | $749.03 |

### Location 001

| Form | Construction | Year | Townhouse/<br>Rowhouse | Number of<br>Families | Occupied | Protection<br>Class | Territory | BCEG |
|---|---|---|---|---|---|---|---|---|
| HO3 | Frame | 1980 | N | 1 | Y | 6 | 731 | 99 |

| County | Dwelling<br>Replacement Cost | Home Updated | Protective Device Credits:<br>Burglar  Fire  Sprinkler  Shutter | Wind / Hail<br>Exclusion |
|---|---|---|---|---|
| Citrus | Y | Y | N        N        N        N | N |

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will expire.

Insurance is provided only with respect to the following coverages for which a limit of liability is specified, subject to all the conditions of this policy.

| COVERAGES - SECTION I | LIMITS | PREMIUMS | COVERAGES - SECTION II | LIMITS | PREMIUMS |
|---|---|---|---|---|---|
| Coverage -A-  Dwelling | $96,200 | $619 | Coverage -E-  Personal Liability | $ 100,000 | |
| Coverage -B-  Other Structures | $9,620 | | Coverage -F-  Medical Payments | $1,000 | |
| Coverage -C-  Personal Property | $48,100 | | | | |
| Coverage -D-  Loss of Use | $19,240 | | | | |

**NOTE: The portion of your premium for hurricane coverage is:      $357**

### Section 1 coverages subject to $1,000 non-hurricane deductible per loss.
### Section 1 coverages subject to $1,924 hurricane deductible per calendar year.

# THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES WHICH MAY RESULT IN HIGH OUT OF POCKET EXPENSES TO YOU.

**If there are hurricane losses in a calendar year on more than one UPCIC policy, the hurricane deductible will be the highest amount stated in any one of the policies. If you have a hurricane loss and choose a lower deductible at policy renewal, the lower deductible will not take effect until January 1 of the following year.**

DESCRIBED LOCATION - The Described Location covered by this policy is at the above address unless otherwise stated:

8411 Doug Corrigan Lane , Crystal River, FL  34429

**Flood coverage is not provided by Universal Property & Casualty Insurance Company and is not part of this policy.**

| Countersignature | Date | *Bradley S. Meier* |
|---|---|---|
| | | President |

B    5 9 22

Grant funds must be used for opening protections, which includes windows, skylights, gable vents, doors and garage doors, and the bracing of gable ends. To be eligible for a grant for opening protection, you must protect all openings identified by your wind inspection report as needing hurricane protection.

**The following is an example of how much you can reduce your insurance premium if you have mitigating features on your home. The example is based on your hurricane-wind premium of $ 357 which is part of your total annual premium of $ 749 . Remember, the discounts shown only apply to the hurricane-wind portion of the premium and the discounts for the construction techniques and features listed above are not cumulative.**

**Existing Construction Discounts ( Homes built prior to 2002)**

| Description of Feature | Estimated* Premium Discount Percent | Estimated* Annual Premium is Reduced by: |
|---|---|---|
| Roof Covering (i.e., shingles or tiles) | | |
| • Meets the Florida Building Code | 0.04 | $14 |
| • Reinforced Concrete Roof Deck | 0.82 | $292 |
| * If this feature is installed on your home you most likely will not qualify for any other discount. | | |
| How Your Roof is Attached | | |
| • Using a 2" nail spaced a 6" from the edge of the plywood and 12" in the field of the plywood | 0.00 | |
| • Using a 2 1/2" nail spaced a 6" from the edge of the plywood and 12" in the field of the plywood | 0.09 | $32 |
| • Using a 2 1/2" nail spaced a 6" from the edge of the plywood and 6" in the field of the plywood | 0.09 | $32 |
| Roof-to-Wall Connection | | |
| • Using "Toe Nails" -- defined as 3 nails are driven at an angle through the rafter and into the top roof. | 0 | |
| • Using Clips - defined as pieces of metal that are nailed into the side of the rafter/truss and into the side of the top plate or wall stud | 0.3 | $107 |
| • Using Single Wraps – a single strap that is attached to the side and/or bottom of the top plate and are nailed to the rafter/truss | 0.3 | $107 |
| • Using Double Wraps - straps are attached to the side and/or bottom of the top plate and are nailed to the rafter/truss | 0.3 | $107 |
| Shutters | | |
| • None | 0 | |
| • Intermediate Type --shutters that are strong enough to meet half the old Miami-Dade building code standards: | 0.2 | $71 |
| • Hurricane Protection Type -- shutters that are strong enough to meet the current Miami-Dade building code standards | 0.3 | $107 |
| Roof Shape | | |
| • Hip Roof – defined as your roof sloping down to meet all your outside walls (like a pyramid). | 0.3 | $107 |
| • Other | 0 | |

* Estimate is based on information currently on file and the actual amount may vary.



6 ex. 22

## Notice of Premium Discounts For Hurricane Loss Mitigation
### *** Important Information ***
### About Your Homeowners Insurance Policy

01/27/2009

Dear Homeowner,

Two unprecedented back-to-back hurricane seasons - with eight hurricanes and four tropical storms - have caused tens of billions of dollars in insured damages. Predictions of more catastrophic hurricanes making landfall in the U.S. have triggered   significant increases in insurance premiums to cover potential future losses. Enclosed is information regarding wind loss mitigation that will make your home more resistant to wind and help protect your family during a  catastrophic event. In addition to reducing your hurricane-wind premium by insalling mitigation features, you may also reduce the likelihood of out of pocket expenses, such as your hurricane deductible, you may otherwise incur after a catastrophic event.

Sincerely,

Universal Property & Casualty Insurance Company

## What factors are considered in establishing my premium?

**Your location :** The closer you are to the coast, the more vulnerable you are to damage caused by hurricane winds and this makes your hurricane-wind premium higher than similar homes in other areas of the state.

**Your policy :**  Your insurance policy is divided into two premiums: one for damage caused by hurricane force winds (hurricane-wind) and one for all other damage (all perils), such as fire.

**Your deductible:**  Under the law, you are allowed to choose a $500, 2%, 5% or 10% deductible depending on the actual value of your home. The larger your deductible, the lower your hurricane-wind premium, however, if you select a higher deductible your out-of-pocket expenses in the event of a hurricane claim will be higher.

**Improvements to your home:** The state requires insurance companies to offer discounts for protecting your home against damage caused by hurricane winds. Securing your roof so it doesn't blow off and protecting your windows from flying debris are the two most cost effective measures you can take to safeguard your home and  reduce your hurricane-wind premium. Discounts apply only to the hurricane-wind portion of your policy.

**Your maximum discount:**  Discounts are not calculated cumulatively. The total discount is not the sum of the individual discounts. Instead, when one discount is applied, other discounts are reduced until you reach your maximum discount of 68%

## How can I take advantage of the discounts?

Most homeowners will need a licensed or certified professional (general, residential or building contractor, building inspector, a registered architect, engineer or certified building code official) to inspect the home to identify potential mitigatiomeasured and legally verify improvements. There may be other inspection professionals available, for a listing of individuals and/or Inspection Companies meeting these qualifications contact your Insurance Agent.

Eligible homeowners can also apply for a free inspection through the new My Safe Florida Home Program by visiting www.mysafefloridahome.com or calling toll-free 1-866-513-6734. To be eligible, Floridians must live in a single-family, site-built homes.

## How much do these improvements cost?

The costs of the improvement projects vary. Homeowners should contact a licensed contractor for an estimate. You can find a Certified Business Contractor in your area by visiting the Florida Department of Business and Professional Regulation online at www.myFloridalicense.com.

Homeowners may be eligible for a matching grant up to $5000 through the My Safe Florida Home Program if they live at least 6 months out of the year in a single-family detached, site-built home that meets the following criteria:

*- was built before March 1, 2002;
*- has an insured value of $300,000 or less;
*- has a valid homestead exemption;
*- is located in the wind-borne debris region; and
*- has undergone a wind inspection

OIR-B1-1655 (Rev. 07/07)



**New Construction Discounts ( Homes built in 2002 or newer)**

| Description of Feature | Estimated* Premium Discount Percent | Estimated* Annual Premium is Reduced by: |
|---|---|---|
| In addition to the two credits below, all homes built in 2002 or newer receive a 68% new home discount on the hurricane-wind portion of | 0.68 | $242 |
| **Shutters**<br>• None<br>• Intermediate Type —shutters that are strong enough to meet half the old Miami-Dade building code standards:<br>• Hurricane Protection Type – shutters that are strong enough to meet the current Miami-Dade building code standards | 0<br>0.06<br><br>0 | $21 |
| **Roof Shape**<br>• Hip Roof – defined as your roof sloping down to meet all your outside walls (like a pyramid).<br>• Other | 0.1<br><br>0 | $35 |

\* Estimate is based on information currently on file and the actual amount may vary.

Alternately and regardless of the year of construction if you meet the minimum fixtures and constructions requirements of the Florida Building Code you have the option to reduce your hurricane-wind deductible from       $   to $   .

If you have furhter questions about the construction techniques and features or other construction techniques and features that could result in a discount, please contact your agent or the company at (352) 628-1030.



8 of 22

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet or Dry Rot, or Bacteria. That sublimit is the amount shown in the Schedule or Declaration Page. This is the most we will pay regardless of the:

(1) Number of locations insured under the policy to which this endorsement is attached;

(2) Number of persons injured;

(3) Number of persons whose property is damaged;

(4) Number of "insureds"; or

(5) Number of "occurrences" or claims-made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

Our total limit of liability under Coverage F for all medical expenses payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F shown in the Declarations.

With respect to damages arising out of "Fungi", Wet or Dry Rot, or Bacteria described in **1. Limit of Liability** of this endorsement. Condition **2. Severability of Insurance** of **Section II - Conditions** is deleted and replaced by the following:

**2. Severability of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II – **Conditions 1. Limit of Liability.** This condition will not increase the limit of liability for this coverage.

**SECTION I AND II – CONDITIONS**

Condition **1. Policy Period** is deleted and replaced by the following:

**1. Policy Period**

This policy applies only to loss or costs in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

All other provisions of the policy apply.

3

9 OF 22

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
# HOMEOWNERS FORM 3

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SCHEDULE*

| | | |
|---|---|---|
| 1. | Section I – Property Coverage Limit of Liability for the Additional Coverage "Fungi", Wet or Dry Rot, or Bacteria | $ 10,000 Each Covered Loss<br>$ 20,000 Policy Aggregate |
| 2. | Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet or Dry Rot, or Bacteria | $ 50,000 |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | | |

## DEFINITIONS

The following definition is added:

9. **"Fungi"**

   a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products or released by fungi.

   b. Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

## SECTION I — PROPERTY COVERAGES

### ADDITIONAL COVERAGES

The following Additional Coverage is added:

11. **"Fungi", Wet or Dry Rot, or Bacteria**

    a. The amount shown in the Schedule above or on the Declaration Page is the most we will pay for:

       (1) The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

       (2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

       (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

       (4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

    b. The coverage described in 11.a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period; and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    c. The **Each Covered Loss** amount shown in the Schedule or on the Declaration Page for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage resulting from any one covered loss.

    The **Policy Aggregate** amount shown in the Schedule or on the Declaration Page for this coverage is the most we will pay for the total of all loss or costs payable under this Additional

Coverage for all covered losses, regardless of the number of locations insured under this endorsement or number of claims-made.

    d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage; except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

    This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

### Coverage A – Dwelling and Coverage B – Other Structures

Paragraph 2.e.(3) is deleted and replaced by the following:

       (3) Smog, rust or other corrosion;

Paragraph 2.e.(9) is added:

       (9) Constant or repeated seepage or leakage of water or the presence of condensation or humidity, moisture, or vapor, over a period of weeks, months, or years; unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

## SECTION I – EXCLUSIONS

Exclusion 1.k. is added:

    k. **"Fungi", Wet or Dry Rot, or Bacteria**

    "Fungi", Wet or Dry Rot, or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

    This exclusion does not apply:

       (1) When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

       (2) To the extent coverage is provided for in the "Fungi", Wet or Dry Rot, or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

    Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION II – CONDITIONS

Condition 1. Limit of Liability is deleted and replaced by the following:

1. **Limit of Liability**



lo of 22

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
SPECIAL PROVISIONS - FLORIDA

**SECTION I – DEFINITIONS**
Item **10.** is added:

10.    "personal watercraft" means watercraft de-
signed to carry one to three people, propelled
by a water jet pump powered by an internal
combustion engine and capable of speeds
greater than 25 mph.

"Personal Watercraft" includes but are not lim-
ited to watercraft often referred to as jet skis,
wave runners and similar watercraft.

**SECTION I - PROPERTY COVERAGES COVER-
AGE C - PERSONAL PROPERTY SPECIAL LIM-
ITS OF LIABILITY**
Items **10.** and **11.** are deleted and replaced by the
following:

10.  $1000 for loss to electronic apparatus, while in
or upon a motor vehicle or other motorized land
conveyance, if the electronic apparatus is
equipped to be operated by power from the
electrical system of the vehicle or conveyance
while retaining its capability of being operated
by other sources of power. Electronic apparatus
includes:

a.  Accessories and antennas; or

b.  Tapes, wires, records, discs or other media;

for use with any electronic apparatus described
in this Item **10.**

11.  $1000 for loss to electronic apparatus, while not
in or upon a motor vehicle or other motorized
land conveyance, if the electronic apparatus:

a.  Is equipped to be operated by power from
the electrical system of the vehicle or con-
veyance while retaining its capability of be-
ing operated by other sources of power;

b.  Is away from the "residence premises"; and

c.  Is used at any time or in any manner for
any "business" purpose.

Electronic apparatus includes:

a.  Accessories and antennas; or

b.  Tapes, wires, records, discs or other media;

for use with any electronic apparatus described
in this Item **11.**

**PROPERTY NOT COVERED**

Item **3.b.** is deleted and replaced by the following:

3.  Motor vehicles or all other motorized land con-
veyances. This includes:

b.  Electronic apparatus that is designed to be
operated solely by use of the power from
the electrical system of motor vehicles or all
other motorized land conveyances. Elec-
tronic apparatus includes:

(1)  Accessories or antennas; or
(2)  Tapes, wires, records, discs or other
media; for use with any electronic appa-
ratus described in this Item **3.b.**

The exclusion of property described in **3.a.**
and **3.b.** above applies only while the prop-
erty is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not sub-
ject to motor vehicle registration which are:

a.  Used to service an "insured's" residence; or

b.  Designed for assisting the handicapped;

**COVERAGE D - LOSS OF USE**

Item **1.** is deleted and replaced by the following:



1.  If a loss covered under this Section makes that
part of the "residence premises" where you re-
side not fit to live in, we cover the Additional
Living Expense, meaning any necessary in-
crease in living expenses incurred by you so
that your household can maintain its normal
standard of living.

Payment will be for the shortest time required to
repair or replace the damage or, if you perma-
nently relocate, the shortest time required for
your household to settle elsewhere.

**SECTION 1- ADDITIONAL COVERAGES**

8.  **Collapse** is deleted and replaced by the follow-
ing:

8.  **Collapse**

a.  With respect to this Additional Coverage:

(1)  Collapse means an abrupt falling down
or caving in of a building or any part of
a building with the result that the build-
ing, or part of the building, cannot be
occupied for its intended purpose.
(2)  A building or any part of a building that
is in danger of falling down or caving in
is not considered to be in a state of col-
lapse.



11 of 22

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) Perils Insured Against in Coverage C - Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items **(2)**, **(3)**, **(4)**, **(5)**, and **(6)** unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

c. If Endorsement **HO 00 15** is attached to the policy, Section I - Additional Coverages **8. Collapse** in that endorsement is deleted in its entirety and Paragraph **b.(1)** above is deleted and replaced by the following:

**b.(1)** Perils Insured Against in Coverages **A** and **B**.

In addition, the following paragraph is added: This additional coverage does not apply to Coverage **C** - Personal Property.

d. If Endorsement **HO 17 31** is attached to the policy, Section I - Additional Coverages **8. Collapse** in that Endorsement is deleted in its entirety and Paragraph **b.(1)** above is deleted and replaced by the following:

**b.(1)** Perils Insured Against in Coverage **A**. In addition, the following paragraph is added: This additional coverage does not apply to Coverage **C** - Personal Property.

9. **Glass or Safety Glazing Material is** deleted and replaced by the following:

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Form **HO 00 08**, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage **8.** in Form **HO 00 08.**)

The following Additional Coverage is added to all Forms With respect to **Form HO 00 04**, the words 'covered building' used below, refer to property covered under Additional Coverage **10.** Building Additions And Alterations.



12 of 22

**4.** **Power Failure** is deleted and replaced by the following:

**4.** **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion **1.d.** in Form **HO 00 03**.)

## SECTION I - CONDITIONS

**3.** **Loss Settlement (HO 00 03)** is deleted and replaced by the following:

**3.** **Loss Settlement (HO 00 03)** property losses are settled as follows:

  **a.** Property of the following types:

    **(1)** Personal property;

    **(2)** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

    **(3)** Structures, **other than screened enclosures,** that are not buildings;

    at actual cash value.

  **b.** Buildings under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

    **(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

      **(a)** The limit of liability under this policy that applies to the building;

      **(b)** The replacement cost of that part of the building damaged for like construction and use on the same premises; or

      **(c)** The necessary amount actually spent to repair or replace the damaged building.

    **(2)** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

      **(a)** That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

    **(3)** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

      **(a)** Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

      **(b)** Those supports in **(a)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

      **(c)** Underground flues, pipes, wiring and drains.

**3.** **Loss Settlement (HO 00 06)** is deleted and replaced by the following:

**3.** **Loss Settlement (HO 00 06)** property losses are settled as follows:

  **a.** Personal property at actual cash value but not more than the amount required to repair or replace.

  **b.** Coverage A – Dwelling, replacement cost subject to policy limits.

**6.** **Appraisal** is deleted and replaced by the following:

**6.** **Mediation Or Appraisal**

If you and we fail to agree on the amount of loss, either may:

  **a.** Demand a mediation of the loss in accordance with the rules established by the Department of Financial Services. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of



13 of 22

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

    (a) Less than 26 feet in overall length;

    (b) 26 feet or more in overall length, not owned by or rented to an "insured."

l.  Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

## SECTION II - EXCLUSIONS

Under **1. Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others**, the following are added:

m.  caused directly or indirectly by animals you own or are kept at the "insured location". Such loss is excluded for all activity or conduct of the insured when an animal owned or kept at the "insured location" is involved in any way with the loss either directly or indirectly. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss

n.  caused directly or indirectly by the ownership, maintenance or use by anyone of any of the equipment or accessory: **(This exclusion n. does not apply to an HO 8,)**

    (1) swimming pool slides;
    (2) diving boards;
    (3) trampolines; and
    (4) skate board ramps.

## SECTION I AND II - CONDITIONS

1.  **Limit of Liability** is deleted and replaced by the following:

1.  **Limit of Liability**

a.  Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

b.  **Sub-limit Of Liability**

Subject to Paragraph a. above, our total liability under Coverage E for damages for

which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded, is $10,000. This sub-limit is within, but does not increase the Coverage E limit of liability.

d.  The limit of liability in **a.** above and sub-limit in **b.** above apply regardless of the number of "insureds", claims made or persons injured.

e.  Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2.  **Concealment or Fraud** is deleted and replaced by the following:

2.  **Concealment Or Fraud**

a.  Under **Section I - Property Coverages**, with respect to all "insureds" covered under this policy, we provide no coverage for loss under **Section I - Property Coverages** if, whether before or after a loss, one or more "insureds" have:

    (1) Intentionally concealed or misrepresented any material fact or circumstance;
    (2) Engaged in fraudulent conduct; or
    (3) Made false statements;

    relating to this insurance.

b.  Under **Section II - Liability Coverages**, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

    (1) Intentionally concealed or misrepresented any material fact or circumstance;
    (2) Engaged in fraudulent conduct; or
    (3) Made false statements; relating to this insurance

5.  **Cancellation**

Paragraphs **b.**, **c.**, and **d.** are deleted and replaced by the following:

b.  When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

c.  We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

Includes copy righted material of Insurance Services Office, Inc., with its permission. · UPCIC 23 01 02 (06-07)

15 of 22

the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

b. Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

(1) Pay its own appraiser; and
(2) Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

**8. Suit Against Us** is deleted and replaced by the following:

**8. Suit Against Us** No action can be brought unless the policy provisions have been complied with and the action is started within 5 years after the date of loss.

**10. Loss Payment** is deleted and replaced by the following:

**10. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:

a. 20 days after we receive your proof of loss and reach written agreement with you; or

b. 60 days after we receive your proof of loss and:

(1) There is an entry of a final judgment; or
(2) There is a filing of an appraisal award or a mediation settlement with us.

c. Under Florida Statues we are required to pay or deny claims or portion of claims, within 90 days of notice of such claim unless there are reasonable circumstances which prevent the company from so doing.

## SECTION II - EXCLUSIONS

Under **1. Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others**, Items a., g. and l. are deleted and replaced by the following:

a. Which is expected or intended by one or more "insureds";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;
(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or
(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, including "personal watercraft" or are sailing vessels, whether owned by or rented to an "insured."

This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";
(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";
(c) One or more outboard engines or motors with 25 total horsepower or less;
(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";
(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:
  (i) You acquire them prior to the policy period; and
    (a) You declare them at **policy inception**; or
    (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

  (ii) You acquire them during the policy period.



e. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 working days after the date cancellation takes effect.

6. **Nonrenewal** is deleted and replaced by the following:

6. **Nonrenewal**

We may elect not to renew this policy. However, we will not nonrenew this policy:

a. On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

b. On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may elect not to renew this policy if:

(1) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

c. A single claim on a property insurance policy which is the result of water damage may not be used as the sole cause for cancellation or nonrenewal unless the we can demonstrate that the insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

This can be done by letting you know at least one hundred (100) days before the renewal date takes effect. However, if the renewal occurs between June 1st and November 30th we are required to give you the (100) day notice or by June 1st which ever is earlier. Proof of mailing will be sufficient proof of notice.

8. **Subrogation**

The following sentence is added to the first paragraph of this condition:

However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the "residence premises" is located.

The following condition is added:

10. **Renewal Notification**

If we elect to renew this policy, we will let you know, in writing:

a. Of our decision to renew this policy; and

b. The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy.

**All other provisions of this policy apply.**



17 of 22

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**(a)** However, When a (mortgage company) lender is responsible for paying the premium through an escrow account and the premium payment is not more than 90 days overdue we will reinstate the insurance policy, retroactive to the date of cancellation. The lender shall reimburse the insured for any penalty or fees we imposed upon you for purposes of reinstating the policy.

**(2)** When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

**(a)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(b)** On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim if. However, we may cancel this policy if:

**(i)** The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

**(ii)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**(c)** A single claim on a property insurance policy which is the result of water damage may not be used as the sole cause for cancellation or nonrenewal unless we can demonstrate that the insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

Except as provided in Item **5.b.** above, we will let you know of our action at least 20 days before the date cancellation takes effect.

**(3)** When this policy has been in effect for more than 90 days, we may cancel:

**(a)** If there has been a material misstatement;

**(b)** If the risk has changed substantially since the policy was issued;

**(c)** In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

**(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

**(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(f)** On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim, if:

**(iii)** The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

**(iv)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**(g)** On the basis of a single claim on a property insurance policy which is the result of water damage may be used as the sole cause for cancellation or nonrenewal if we can demonstrate that the insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

This can be done by letting you know at least one hundred (100) days before the date cancellation takes effect. However, if the cancellation occurs between June 1st and November 30th we are required to give you the (100) day notice or by June 1st which ever is earlier. Proof of mailing will be sufficient proof of notice.

**d.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.



18 of 22

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
# PERSONAL PROPERTY REPLACEMENT COST

**SECTION I**

For additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

    **a.** Coverage C-Personal Property;

    **b.** If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

    **a.** Jewelry;

    **b.** Furs and garments trimmed with fur or consisting principally of fur;

    **c.** Cameras, projection machines, films and related articles of equipment;

    **d.** Musical equipment and related articles of equipment;

    **e.** Silverware, silver-plated ware, goldware, gold plated ware and pewter ware, but excluding pens, pencils, flasks, smoking implements or jewelry; and

    **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

**1. PROPERTY NOT ELIGIBLE**

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

    **a.** Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

    **b.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

    **c.** Articles not maintained in good or workable condition.

    **d.** Articles that are outdated or obsolete and are stored or not being used.

**2. REPLACEMENT COST**

The following loss settlement procedure applies to all property insured under this endorsement:

We will pay no more than the least of the following amounts:

    **a.** The full cost of repair at the time of loss;

    **b.** The limit of liability that applies to Coverage **C**, if applicable;

    **c.** An applicable special limits of liability stated in this policy; or

    **d.** For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

**ALL OTHER PROVISIONS OF THIS POLICY APPLY**





19 of 22

## ATTACH THIS ENDORSEMENT TO YOUR POLICY.
# SINKHOLE COVERAGE.

**PERILS INSURED AGAINST.**

**(HO3; HO4; HO6; and HO8).**

The following peril is added.

**Sinkhole Collapse,** meaning the collapse or settlement of earth resulting from a sinkhole. Only if there is structural damage to the building from sinkhole activity.

    **a.**  "Sinkhole" means a landform created by subsidence of soil, sediment, or rock as underlying strata are dissolved by groundwater. A sinkhole may form by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.

    **b.**  "Sinkhole loss" means structural damage to the building, including the foundation, caused by sinkhole activity. Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.

    **c.**  "Sinkhole activity" means settlement or systematic weakening of the earth supporting such property. Only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

The **Section I - Earth Movement Exclusion** does not apply to this peril.

**LOSS SETTLEMENT.**

The following is added.

**(HO3; HO4; HO6 and H08).**

If a covered loss resulting from a sinkhole is verified, and the dwelling or personal property is insured on the basis of replacement cost:

(1) We may limit our payment to the actual cash value of the sinkhole loss, not including underpinning or grouting, or any other repair technique performed below the existing foundation of the building, until you enter into a contract for the performance of building stabilization or foundation repairs. After you enter into the contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. We may not require you to advance payment for such repairs.

(2) If the repair has begun and the professional engineer selected or approved by us determines that the repair cannot be completed within the policy limits we must either complete the professional engineer's recommended repair or tender the policy limits. Payment will not be reduced for the repair expenses incurred.

(3) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of the professional engineer as provided under statute, and in consultation with you, subject to the coverage and terms of the policy. We will pay for other repairs to the structure in accordance with the terms of the policy. We will pay for contents in accordance with the terms of the policy.

(4) Except as described in Item (2), the amount payable for a covered loss for a sinkhole shall not exceed the applicable limit of liability.

    

**B**   20 of 22

**CONDITIONS.**

The following is added.

  **6.**  **Mediation** or **Appraisal** is deleted and replaced by the following.

  **6.**  **Mediation** or **Appraisal** or **Neutral Evaluation.** If you and we fail to agree on the amount of loss, either may:

  **a.**  For all claims except sinkhole, demand a mediation of the loss in accordance with the rules established by the Florida Insurance Department. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within three (3) business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

  We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference. We will also pay the mediator's fee for the rescheduled conference.

  **b.**  Following the receipt of the report provided under Section 627.7073, Florida Statutes or our denial of a claim for a sinkhole loss, demand neutral evaluation in accordance with the Florida Statutes and the rules established by the Florida Department of Financial Services.

  Neutral evaluation is nonbinding, but mandatory if requested by either party. A request for neutral evaluation must be filed with the Florida Department of Financial Services. The request for neutral evaluation must state the reason for the request. The request must include an explanation of all the issues in dispute at the time of the request. Filing a request for neutral evaluation tolls the applicable time requirements for filing suit for a period of 60 days following the conclusion of the neutral evaluation process or five years whichever is later.

  Neutral evaluation shall be conducted as an informal process. Formal rules of evidence and procedure need not be observed. A party to neutral evaluation is not required to attend neutral evaluation if a representative of the party attends and has the authority to make a binding decision on behalf of the party.

  If the neutral evaluator first verifies the existence of a sinkhole and, second, recommends the need for and estimates costs of stabilizing the land and any covered structures or buildings and other appropriate remediation or structural repairs, which costs exceed the amount that we have offered to pay you, we are liable to you up to $2,500 in attorney's fees for the attorney's participation in the neutral evaluation process. The term "offer to pay" means a written offer signed by the us or our legal representative. It must be delivered to you within 10 days after the we receive notice that a request for neutral evaluation has been made under this section.

  If we timely agree in writing to comply with the recommendation of the neutral evaluator, but you decline to resolve the matter in accordance with the recommendation of the neutral evaluator pursuant to this section:

  (a) We are not liable for extracontractual damages related to a claim for a sinkhole loss but only as related to the issues determined by the neutral evaluation process. This does





21 OF 22

not affect or impair claims for extracontractual damages unrelated to the issues determined by the neutral evaluation process contained in this section; and

(b) We are not liable for attorney's fees under s. 627.428 or other provisions of the insurance code unless you obtain a judgment that is more favorable than the recommendation of the neutral evaluator.

We will pay the cost of conducting any Neutral Evaluation. We will not pay the cost of conducting any Neutral Evaluation when you or your representative with the authority to make a binding decision fails to appear at a conference. That conference will then be rescheduled upon your payment of the Neutral Evaluator's fee for that rescheduled conference. However, if we fail to appear at a Neutral Evaluation conference, we will pay your actual cash expenses you incur in attending the conference. We will also pay the Neutral Evaluator's fee for the rescheduled conference.

c. Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within twenty (20) days after the receiving of a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within fifteen (15) days, you or we may request that the choice be made by a judge of a court of record in the state where the "described location" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss. Each party will:

(1) Pay its own appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

If, however, we demand the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

**ALL OTHER PROVISIONS OF THIS POLICY APPLY.**





2z of 2z



⌂ Home     ⓘ Information     ✆ Contact

## Customer Service 800.425.9113

**Customer Login**

**Customer Care**

**Claims**

**Products & Services**

**Company**

**Agent Recources**

**Become an Agent**





Find an Agent ⌐     Request a Quote ⌐

## About Universal

Universal Property & Casualty Insurance Company (UPCIC) is a wholly-owned subsidiary of Universal Insurance Holding Company, a Florida corporation. Universal Insurance Holding Company is wholly owned by Universal Insurance Holdings, Inc.

UPCIC has aligned itself with some of the best and most respected service providers in the industry. This functional structure affords UPCIC the opportunity to take advantage of a unique combination of financial strength, underwriting skills, analytical expertise and administrative capability

Universal Property & Casualty Insurance Company has a distinguished and experienced group of individuals as its directors and officers. The individuals provide guidance and lend their expertise to ensure this insurance operation continues to be successful in the property and casualty insurance marketplace.

**Mission Statement**

The mission of Universal Property & Casualty Insurance Company and the Red Elephant is to deliver exceptional service and value to you, our customer. We offer smart solutions, financial security and peace of mind. The wisdom of the Red Elephant guarantees that we never forget our most important job, serving our customers. The Red Elephant and Universal Property & Casualty are always ready to stand by your side.

Universal Property & Casualty Insurance Company is dedicated to providing unsurpassed service to its agents and our customers. When you call Universal Property & Casualty, you will not talk to a voice mail system. A well-trained representative is ready to help.

Underwriters are always available. Universal Property & Casualty is committed to processing all claims quickly and efficiently with every effort made to furnish the client with immediate service.

We pride ourselves on personal attention, servicing each customer's claim as if s(he) were a member of our own family. Our goal is to give our customers the quickest turnaround time possible on all claims.

Universal Property & Casualty has been granted a superior "A" rating by Demotech.





Ex- C

## CLAIM FOR DAMAGES

1. Copy of first Notification of Amount of Loss dated May 20, 2009.          $121,145

2. Notation by later letter that coverage D, Loss of Use was added-
   Page 11 of 22- now 5 months at $1,000 per month                          5,000

3. Inability of UNIVERSAL to resolve liability and pay Loss Amount-
   (internet advertising, Exhibit C):

   *"Underwriters are always available.  Universal Property & Casualty
   is committed to processing all claims quickly and efficiently with
   every effort made to furnish the client with immediate service."*

4. Services of Power of Attorney, Kenneth A. Stoecklin, CPA, were
   overwhelmed, what with errors in Policy needing correction,
   three "adjusters" verbally claiming authority to resolve Claim but
   none of the three Noticed by UNIVERSAL to either Principle Gagle,
   or Agent Stoecklin, as appointed with authority to resolve Claim.

   To Date, Agent Stoecklin bills Principle Gagle for-
   Labor, printing and postage  five months                                 7,000

   Expected costs to clean up burned property                               2,000

   Expected costs to file Complaint                                         855

   Anticipated costs from Agent Stoecklin and legal assistance from
   this date to completion and payment of Claim by UNIVERSAL                25,000

                              Total of Claim                               $161,000







**Kenneth A. Stoecklin**
**c/o P. O. Box 307**
**Crystal River, Florida 34423**

May 20, 2009

Universal Property and Casualty Insurance
c/o Universal Risk Advisors
1110 W. Commercial Blvd.,  Suite 300
Fort Lauderdale, FL  33309

In Re:  Policy UPCIC 592-057-081
Notification of Amount of Loss

Gentlemen:

With further reference to my Notification of Loss letter dated May 14, 2009, please be advised that the amount of Loss claimed is:

| | |
|---|---|
| Coverage A - Dwelling | $96,200 |
| Coverage C - Personal Property | 24,945 |
| Total | $121,145** |

The Dwelling was a total loss, reported by the Fire Marshall report.  The listed Personal Property is estimated replacement cost.  Detailed listing attached.

While having received no confirmation from the Insurance Carrier (my letter dated May 14, 2009), I will forward copy of the enclosed to Mr. Marcus Ayo, who reported verbally that he had been assigned as the Adjuster for this claim.  Mr. Ayo can contact me for any further assistance in this matter.

Respectfully submitted,

Kenneth A. Stoecklin, by Power of Attorney

7009 0080 0000 8074 8249

Ex D-1

| Item | Location | Replacement Value |
|------|----------|-------------------|
| Queen Size Bed w Sealy mattresses | Master Bedrm | $ 4,000.00 |
| Large Fancy Book Case 4 Shelf | Master Bedrm | $ 500.00 |
| Small Book Case 2 Shelf | Master Bedrm | $ 175.00 |
| Large Two Mirrow Dresser | Master Bedrm | $ 900.00 |
| 2 Drawer Night Stand | Master Bedrm | $ 200.00 |
| 3 Drawer Heavy Metal Chest Of Drawers | Master Bedrm | $ 600.00 |
| 32" TV GE Black | Master Bedrm | $ 700.00 |
| Window airconditioner unit | Master Bedrm | $ 600.00 |
| 1 Drawer 2 Shelf Phone Stand | Master Bedrm | $ 100.00 |
| Floor Lamp | Master Bedrm | $ 15.00 |
| Hall Tree For Clothes | Master Bedrm | $ 1,50.00 |
| Towels & linens | Closets | $ 1,00.00 |
| Antique Bed | Guest Bedrm | $ 1,000.00 |
| Window airconditioner unit | Guest Bedrm | 400.00 |
| Six Chair Heavy Wooden Dining Table | Dinning Room | $ 1,200.00 |
| China Cabinet | Dinning Room | $ 1,200.00 |
| Large refrigerator two door | Kitchen | $ 1,700.00 |
| Electric stove flat top modern | Kitchen | $ 800.00 |
| Silverware | Kitchen | $ 400.00 |
| Cookware, pots, pans, elec skillet, etc | Kitchen | $ 700.00 |
| 220 V Window Airconditioner unit | Living Room | $ 1,200.00 |
| Large Couch, Small Couch, Chair Matching | Living Room | $ 1,500.00 |
| Small Antique Table | Living Room | $ 150.00 |
| Larger Antique Table | Living Room | $ 150.00 |
| 3 lamps | Living Room | $ 200.00 |
| Large Wooden Computer Desk | Living Room | $ 500.00 |
| 3 Piece Fancy Entertainment Center | Living Room | $ 1,200.00 |
| 32" TV MAGNAVOX Silver | Living Room | $ 700.00 |
| 4 Piece Orange Delux Office Chair Set | Living Room | $ 400.00 |
| Large Book Case 3 Shelf | Living Room | $ 300.00 |
| Small Book Case 3 Shelf | Living Room | $ 200.00 |
| Floor Lamp | Living Room | $ 120.00 |
| Small Bed Set With 2 Lower Drawers | Small Bedrm | $ 200.00 |
| Cheast Of Drawers 3 Drawers Heavy | Small Bedrm | $ 300.00 |
| Fancy Outdor Set 2 Swivel Chairs & Table | Porch | $ 200.00 |
| 2 Microwaves (each) $100 | Kitch/Master BR | $ 200.00 |
| | | |
| 2 Drawer File Cabinet | House | $ 200.00 |
| 2 Metal Typing tables @ $50 | House | $ 100.00 |
| TOTAL | | $ 24,945.00 |
| | | |
| Name: Merlin Gagle | | |
| Address: Citrus County | | |
| City/State/Zip: Crystal River, FL 34429 | | |

EX D-2


**UNITED STATES**
**POSTAL SERVICE** ®

Home | He

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: **7009 0080 0000 8074 8249**
Class: **First-Class Mail**®
Service(s): **Certified Mail**™
Status: **Delivered**

Your item was delivered at 10:47 AM on May 22, 2009 in FORT
LAUDERDALE, FL 33309.

Detailed Results:

- **Delivered, May 22, 2009, 10:47 am, FORT LAUDERDALE, FL 33309**
- **Arrival at Unit, May 22, 2009, 7:48 am, FORT LAUDERDALE, FL 33309**
- **Acceptance, May 20, 2009, 12:44 pm, CRYSTAL RIVER, FL 34429**

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.    *Go >*

**Track & Confirm**
Enter Label/Receipt Number.

| Site Map | Customer Service | Forms | Gov't Services | Careers | Privacy Policy | Terms of Use | Business Customer Ga |

Copyright© 2009 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

# Ex D-3

